# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**CHRISTOPHER P. HANNEY,**

**Plaintiff,**

**-vs-**                                   **Case No.  8:13-cv-2928-T-36MAP**

**MOISES GARCIA, et al.,**

**Defendants.**

_____/

## ORDER

This cause comes before the Court upon five motions to dismiss: (1) Defendant David Gee [sic], Sheriff, Hillsborough County, in his Individual and Official Capacity, Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law and Counterclaim (Dkt. 15); (2) Defendant Moises Garcia's Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Dkt. 16); (3) Defendant Victor DeJesus Miranda's Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Dkt. 17); (4) Defendant Florida Health Sciences Center, Inc. D/B/A Tampa General Hospital's Motion to Dismiss "Proposed Supplemental Complaint" and Incorporated Memorandum of Law (Dkt. 21); and (5) Defendant Miguel Santamaria's Motion to Dismiss "Proposed Supplemental Complaint" and Incorporated Memorandum of Law (Dkt. 28). Plaintiff filed responses in opposition to the motions to dismiss (Dkts. 33, 34, 35, 36, 37).  Having considered the motions to dismiss and Plaintiff's responses thereto, and relevant legal authorities, the Court will now grant Defendants' motions to dismiss.

## I. BACKGROUND

### A. Statement of Facts[1]

On November 17, 2009, Plaintiff arrived at the emergency room at Tampa General Hospital ("TGH") in Tampa, Florida, for treatment of a stab wound to his abdomen. While Plaintiff was receiving treatment, Defendant Garcia, a detective with the Hillsborough County Sheriff's Office, and Defendant DeJesus-Miranda, a deputy with the Hillsborough County Sheriff's Office, questioned and obtained information from medical staff at TGH regarding "pain control medication given to the Plaintiff."[2] Garcia and DeJesus-Miranda also obtained unspecified medical information from Plaintiff's "medical chart," that was left "unattended" by medical staff at TGH.[3] The medical information that was obtained from the medical staff and Plaintiff's "medical chart" was "used against the Plaintiff in a criminal action."[4]

DeJesus-Miranda handcuffed Plaintiff to his hospital bed and obtained statements from Plaintiff without advising him of "his rights."[5] The statements were used against Plaintiff during his criminal trial.[6]

---

[1]The following statement of facts is derived from Plaintiff's Second Amended Complaint (Dkt. 10), the allegations of which the Court must accept as true in ruling on the instant motions to dismiss. *See Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992)*; Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

[2]*See* Dkt. 10 at docket p. 9.

[3]*See* Dkt. 10 at docket p. 9.

[4]*See* Dkt. 10 at docket p. 11.

[5]Presumably, Plaintiff alleges that Defendant DeJesus-Miranda did not read him his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966) (holding that statements made by a suspect in police custody are admissible at trial only if an officer has informed the suspect of his right to counsel and his right against self-incrimination and the suspect knowingly waived those rights).

[6]*See* Dkt. 10 at docket p. 2.

Finally, while Plaintiff was receiving treatment at TGH, Defendant Santamaria, a chaplain employed by TGH, initiated a conversation with Plaintiff.[7]  Plaintiff "understood" the conversation "to be spiritual guidance," and "assumed" the conversation was "confidential."[8]  Santamaria, however, disclosed the information he obtained from Plaintiff during their conversation to police, and subsequently testified against Plaintiff during Plaintiff's criminal trial.[9]

Plaintiff's criminal trial resulted in a conviction for attempted murder and a life sentence.[10]

## B. Plaintiff's Second Amended Complaint

The Second Amended Complaint alleges generally that Defendants' conduct violated his rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article I, Sections 12 and 23 of the Florida Constitution, and Florida Statutes, Sections 395.3025(4)(d) and 90.505, and seeks redress for these violations pursuant to 42 U.S.C. § 1983. Plaintiff does not, however, indicate which provisions apply to each defendant.  In recognition of the fact that he is a *pro se* litigant, the Court will afford him wide latitude when construing his pleadings, and will use common sense to ascertain the violations alleged therein. *See S.E.C. v. Elliott*, 953 F.2d 1560, 1582 (11th Cir. 1992).  Accordingly, the Court discerns that it reasonably appears that Plaintiff is alleging that: (1) Defendants DeJesus-Miranda and Garcia obtaining Plaintiff's medical information without a warrant, subpoena, or Plaintiff's authorization violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution,

---

[7]*See* Dkt. 10 at docket p. 11.

[8]*See* Dkt. 10 at docket p. 11.

[9]*See* Dkt. 10 at docket p. 12.

[10]*See* Dkt. 10 at docket p. 12.

Article I, Sections 12 and 23 of the Florida Constitution,[11] and Florida Statutes, Section 395.3025(4)(d);[12] (2) Defendant DeJesus-Miranda violated Plaintiff's Fifth Amendment right against self-incrimination because DeJesus-Miranda did not give Plaintiff a *Miranda* warning before obtaining statements from Plaintiff; (3) Defendant Gee (a) as ultimate authority of the Hillsborough County Sheriff's Department, is responsible for Defendants DeJesus-Miranda and Garcia's actions, and (b) maliciously prosecuted Plaintiff even though Gee knew of Garcia and DeJesus-Miranda's unconstitutional actions; (4) Defendant Santamaria's actions violated Plaintiff's (a) Fifth Amendment privilege against self-incrimination, and (b) rights under both Article I, Section 12 of the Florida Constitution and Florida Statutes, Section 90.505;[13] and (5) Defendant TGH (a) violated Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution, Article I, Section 23 of the Florida Constitution, and Florida Statutes, Section 395.3025(4)(d) when its medical personnel answered DeJesus-Miranda and Garcia's questions regarding the pain medication given to Plaintiff, and left Plaintiff's medical chart unattended, and (b) violated Plaintiff's Fifth Amendment privilege against self-incrimination, Plaintiff's rights under Article I, Section 12 of the Florida Constitution, and Plaintiff's rights under Florida Statutes, Section 90.505 when Defendant Santamaria provided Plaintiff's "confidential statements" to law enforcement.

As relief, Plaintiff requests compensatory and punitive damages from each Defendant.[14]

---

[11]Article I, Section 12 of the Florida Constitution pertains to searches and seizures.  Article I, Section 23 pertains to the right of privacy.

[12]Section 395.3025 pertains to disclosure of patient's medical records.

[13]Section 90.505 is Florida's version of the clergy communications privilege.

[14]*See* Dkt. 10 at docket pp. 12-13.

## II. STANDARD OF REVIEW

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.  For the purposes of a motion to dismiss, the court must view the allegations in the light most favorable to the plaintiff.  *Jackson v. Okaloosa County*, 21 F.3d 1531, 1534 (11th Cir. 1994).

## III. DISCUSSION

### A. Plaintiff is not entitled to money damages for alleged violations of Florida Statutes, Sections 395.3025(4)(d) and 90.505

Plaintiff requests money damages for alleged violations of Florida Statutes, Sections 395.3025(4)(d) and 90.505 (Dkt. 10 at docket p. 8).  This is a state law claim governed by Florida law.  Under Florida law, the violation of a statute can give rise to civil liability only if the statute indicates an intention to create a private cause of action.  *Murthy v. Sinha Corp.*, 644 So. 2d 983, 985-86 (Fla. 1994).  Section 395.3025(4)(d) is "designed to protect the privileged and confidential status accorded to a patient's medical records." *State v. Johnson*, 814 So. 2d 390, 394 (Fla. 2002)

5

(Pariente, J., concurring).  Section 90.505 recognizes an evidentiary privilege for communications to clergy.  Neither of these statutes, however, expressly creates a private cause of action for their violation.  *See* Fla. Stat., §§ 395.3025, 90.505.  Therefore, this Court must determine whether the Florida Legislature implicitly intended to provide a private right of action for violations of these statutes.

"The primary guide in determining whether the Legislature intended to create a private cause of action is the 'actual language used in the statute.'" *QBE Ins. Corp. v. Chalfonte Condominium Apartment Ass'n, Inc.*, 94 So. 3d 541, 551 (Fla. 2012) (quoting *Borden v. East-European Ins. Co.*, 921 So. 2d 587, 595 (Fla. 2006)).  Nothing in the language of Sections 395.3025 and 90.505 suggests that the Florida Legislature intended to create a private cause of action for a violation of these statutes. See §§ 395.3025, 90.505.  Accordingly, Plaintiff's claim for money damages for the alleged violations of §§ 395.3025 and 90.505 will be dismissed.

**B. Plaintiff is not entitled to money damages for alleged violations of the Florida Constitution, Article I, Sections 12 and 23**

Plaintiff alleges that Defendants violated his rights under Article I, Sections 12 and 23 of the Florida Constitution, and requests money damages for those violations.  In Florida, however, "no cause of action exists for money damages for a violation of a state constitutional right." *Depaola v. Town of Davie*, 872 So. 2d 377, 380 (Fla. 4th DCA Dist. 2004) (citing *Garcia v. Reyes*, 697 So. 2d 549 (Fla. 4th DCA 1997)).  *See also Holcy v. Flagler County Sheriff*, 2007 U.S. Dist. LEXIS 65806, at *19 (M.D. Fla. Sept. 6, 2007) ("Florida constitutional claims do not support claims for

damages absent a separate enabling statute. . . .") (citing *Garcia*, 697 So. 2d 549).[15]  Accordingly,

Plaintiff's claim for money damages for violations of Article I, Sections 12 and 23 will be dismissed.

## C. Defendants Garcia and DeJesus-Miranda

Garcia and DeJesus-Miranda contend that they are entitled to dismissal of Plaintiff's Second

Amended Complaint because: (1) Plaintiff fails to state a cause of action for a civil rights violation

under the Health Insurance Portability and Accountability Act ("HIPAA");[16] (2) Plaintiff's claims

are barred by the statute of limitations; (3) they are entitled to qualified immunity; (4) the Second

Amended Complaint is subject to dismissal under Rule 10(b), Fed.R.Civ.P.; and (5)  Plaintiff's

claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

### 1. HIPAA claim

Garcia and DeJesus-Miranda argue that Plaintiff's claim that his civil rights were violated

when Garcia and DeJesus-Miranda violated federal HIPAA law fails to state a claim for relief

because there is no private cause of action under HIPAA.  Plaintiff, however, did not allege a claim

for violation of HIPAA in the Second Amended Complaint (*see* Dkt. 10).[17]  Rather, Plaintiff alleged

that Garcia and DeJesus-Miranda's actions violated his rights under the United States Constitution,

Florida Constitution, and Florida Statutes, Sections 90.505 and 395.3025 (Id.).  Accordingly, Garcia

---

[15]Plaintiff does not characterize his claims as state common-law tort actions.  And, even if he had, the Court would decline to exercise its supplemental jurisdiction over the state claims because all federal claims will be dismissed, as discussed *infra*.  *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726-27 (1966)("Certainly, if the federal claims are dismissed before trial,. . .the state claims should be dismissed as well."); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088-89 (11th Cir. 2004) ("The decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial.") (citation omitted).

[16]*See* 42 U.S.C. § 1320d to 1320d-9.

[17]Plaintiff alleged a claim for violation of HIPAA in his original complaint (Dkt. 1).  The Court dismissed the original complaint with leave to amend (Dkt. 5).

and DeJesus-Miranda are not entitled to dismissal of the Second Amended Complaint on this basis.

### 2. Statute of limitations

Garcia and DeJesus-Miranda contend that Plaintiff's suit is barred by the statute of limitations because the alleged constitutional violations occurred on November 17, 2009, and Plaintiff did not file his original complaint until November 18, 2013. A federal § 1983 claim is governed by the forum state's residual personal injury statute of limitations. *Burton v. City of Belle Glade*, 178 F.3d 1175, 1188 (11th Cir. 1999) (citing *Owens v. Okure*, 488 U.S. 235, 249-50 (1989); *Wilson v. Garcia*, 471 U.S. 261, 276 (1985). In Florida, "a plaintiff must commence a § 1983 claim . . . within four years of the allegedly unconstitutional or otherwise illegal act." *Burton*, 178 F.3d at 1188 (citation omitted).

Although the Court received and filed Plaintiff's complaint on November 18, 2013 (*see* Dkt. 1), Plaintiff delivered his complaint to prison authorities for mailing on November 15, 2013 (*Id.* at docket p. 1). Under the prison mailbox rule, a prisoner's complaint is deemed filed on the date it is delivered to prison officials for mailing. *See Houston v. Lack*, 487 U.S. 266, 271-72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-41 (11th Cir. 1999). Therefore, Plaintiff's complaint is deemed filed on November 15, 2013. *See Drew v. Dep't of Corr.*, 297 F.3d 1278, 1299 (11th Cir. 2002) ("A prisoner who [timely] delivers a document to prison authorities gets the benefit of the prison mailbox rule."). Consequently, Plaintiff's original complaint is deemed filed on November 15, 2013, less than four years after November 17, 2013. Accordingly, DeJesus-Miranda and Garcia are not entitled to dismissal of Plaintiff's claims based on the statute of limitations.

### 3. Qualified Immunity

Garcia and DeJesus-Miranda assert that they are entitled to dismissal of Plaintiff's claims

against them based on the doctrine of qualified immunity.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (citation omitted) (quotation omitted).  To be entitled to qualified immunity, a government official first must demonstrate that "he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred." *Rich v. Dollar*, 841 F.2d 1558, 1563-64 (11th Cir. 1988) (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th Cir. 1983)).  If the defendant satisfies this burden, then the Court must grant qualified immunity unless the plaintiff can demonstrate first, that the facts viewed in the light most favorable to the plaintiff establish a constitutional violation by the defendant, and, second, that it was clearly established at the time of the incident that the actions of the defendant were unconstitutional.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also McCullough v. Antolini*, 559 F.3d 1201, 1205 (11th Cir. 2009).[18]   Ultimately, "'the salient question is whether the state of the law [at the time of the unconstitutional act] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional.'" *Williams v. Consolidated City of Jacksonville*, 341 F.3d 1261, 1270 (11th Cir. 2003) (alterations in original) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2000)).

There are several ways in which an official may be given "fair warning" that his conduct in specific circumstances violates the U.S. Constitution or federal law.

First, the words of the pertinent federal statute or federal constitutional provision in some cases will be specific enough to establish clearly the law applicable to

---

[18]Courts are permitted to exercise discretion in determining which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand. *Pearson*, 555 U.S. at 236.

particular conduct and circumstances to overcome qualified immunity, even in the total absence of case law. This kind of case is one kind of "obvious clarity" case. For example, the words of a federal statute or federal constitutional provision may be so clear and the conduct so bad that case law is not needed to establish that the conduct cannot be lawful.

Second, if the conduct is not so egregious as to violate, for example, the Fourth Amendment on its face, we then turn to case law. When looking at case law, some broad statements of principle in case law are not tied to particularized facts and can clearly establish law applicable in the future to different sets of detailed facts. *See Marsh* [*v. Butler County*], 268 F.3d [1014,] 1031-32 n.9 [(11th Cir. 2001)]. For example, if some authoritative judicial decision decides a case by determining that "X Conduct" is unconstitutional without tying that determination to a particularized set of facts, the decision on "X Conduct" can be read as having clearly established a constitutional principle: put differently, the precise facts surrounding "X Conduct" are immaterial to the violation. These judicial decisions can control "with obvious clarity" a wide variety of later factual circumstances. These precedents are hard to distinguish from later cases because so few facts are material to the broad legal principle established in these precedents; thus, this is why factual differences are often immaterial to the later decisions. But for judge-made law, there is a presumption against wide principles of law. And if a broad principle in case law is to establish clearly the law applicable to a specific set of facts facing a governmental official, it must do so "with obvious clarity" to the point that every objectively reasonable government official facing the circumstances would know that the official's conduct did violate federal law when the official acted.

Third, if we have no case law with a broad holding of "X" that is not tied to particularized facts, we then look at precedent that is tied to the facts. That is, we look for cases in which the Supreme Court or we, or the pertinent state supreme court has said that "Y Conduct" is unconstitutional in "Z Circumstances." We believe that most judicial precedents are tied to particularized facts and fall into this category. . . . When fact-specific precedents are said to have established the law, a case that is fairly distinguishable from the circumstances facing a government official cannot clearly establish the law for the circumstances facing that government official; so, qualified immunity applies. On the other hand, if the circumstances facing a government official are not fairly distinguishable, that is, are materially similar, the precedent can clearly establish the applicable law.

*Vinyard v. Wilson*, 311 F.3d 1340, 1350-52 (11th Cir. 2002) (alterations added) (footnotes omitted).

It is clear from the allegations of the Second Amended Complaint that Garcia and DeJesus-

Miranda were acting in the scope of their discretionary authority during the course of the alleged

violations. Plaintiff has not argued otherwise (see Dkts. 33, 35). Accordingly, for the sake of these motions to dismiss, the Court will assume, without deciding, that Garcia and DeJesus-Miranda's actions violated Plaintiff's constitutional rights, then consider whether at the time of the alleged violations it was clearly established that Garcia and DeJesus-Miranda's actions were unconstitutional.[19]

**a. Claim that Garcia and DeJesus-Miranda violated Plaintiff's right to privacy under the Fourth and Fourteenth Amendments**

Plaintiff contends that Garcia and DeJesus-Miranda's actions in obtaining, without a warrant, subpoena, or Plaintiff's authorization, (1) unspecified medical information from Plaintiff's medical chart, and (2) "information pertaining to pain control medication given to Plaintiff" from medical staff at TGH, violated Plaintiff's privacy rights under the Fourth and Fourteenth Amendments to the United States Constitution (Dkt. 10 at docket p. 8-9).

"The United States Constitution does not expressly guarantee a right to privacy, but the Supreme Court has held that a right to privacy does exist within the liberty component of the Fourteenth Amendment." *Padgett v. Donald*, 401 F.3d 1273, 1280 (11th Cir. 2005) (citing *Roe v. Wade*, 410 U.S. 113, 152-53 (1973)). And, a right to privacy has been fashioned from the Fourth Amendment protections from unreasonable searches and seizures. *See Terry v. Ohio*, 392 U.S. 1, 8-9 (1968); *Griswold v. Connecticut*, 381 U.S. 479, 485 (1965). "[T]he right to privacy guards [*inter alia*] an individual's interest in avoiding disclosure of certain personal matters." *Padgett*, 401 F.3d

---

[19]*See Morris v. Town of Lexington Ala.*, 748 F.3d 1316, 1322 (11th Cir. 2014) ("A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other.") (citing *Pearson*, 555 U.S. at 236).

at 1280 (citing *Whalen v. Roe*, 429 U.S. 589, 598-99 (1977); *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684 (1977); *Harris v. Thigpen*, 941 F.2d 1495, 1513 n.26 (11th Cir. 1991)).  Although "[t]he scope of personal matters protected by a right to privacy has never been fully defined[,]" *Douglas v. Dobbs*, 419 F.3d 1097, 1101 (10th Cir. 2005), some federal courts have held that "personal matters" include "personal medical information or personal medical records."  *Burgest v. United States*, 2007 U.S. Dist. LEXIS 102056, at *26 (S.D. Fla. Dec. 17, 2007) (citing *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994); *Schaill ex rel. Kross v. Tippecanoe Co. Sch. Corp.*, 864 F.2d 1309, 1322 n. 19 (7th Cir. 1988)); *but see Jarvis v. Wellman*, 52 F.3d 125, 126 (6th Cir. 1995) (disclosure of medical records does not violate constitutional right to privacy).  Nevertheless, in this Circuit the nature and scope of the right to privacy with respect to public disclosure of personal matters such as personal medical information is far from settled. *Cf. Harris v. Thigpen*, 941 F.2d at 1514 n.26 (addressing the question of whether there is "a right to privacy in preventing the non-consensual disclosure of one's medical condition or diagnosis" and determining that the "scope of such a right. . .is far from settled. . . .").

Plaintiff has cited no case with materially similar facts from the Supreme Court, the Eleventh Circuit, or the Supreme Court of Florida which might have given Garcia and DeJesus-Miranda fair warning that as of November 17, 2009, their actions violated the Fourth and Fourteenth Amendments.[20]  Nor has this Court's research revealed such a case.  Although Plaintiff argues that Garcia and DeJesus-Miranda's actions violated clearly established Florida constitutional and statutory law (see Dkt. 35 at pp. 4-13), the qualified immunity analysis requires Plaintiff to show

---

[20] In the Eleventh Circuit, a plaintiff can meet his burden of showing that the alleged constitutional violations were clearly established by pointing to "decisions of the U.S. Supreme Court, the United States Court of Appeals for the Eleventh Circuit, and the highest court of the pertinent state." *Marsh v. Butler Cnty.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc).

that "the law must have earlier been developed in such a concrete and factually defined context to make it obvious to all reasonable government actors, in the defendant's place, that what he is doing violates *federal law*." *Stanley v. City of Dalton, Ga.*, 219 F.3d 1280, 1285 (11th Cir. 2000) (emphasis added) (internal citations and quotations omitted).[21]  Therefore, Plaintiff has not met his burden to show that Garcia and DeJesus-Miranda had fair warning that while they had Plaintiff in custody at TGH's emergency room, their actions in obtaining (without a warrant, subpoena, or Plaintiff's authorization) information from Plaintiff's medical chart, and information from medical staff pertaining to the pain control medication Plaintiff received, violated Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution.  Accordingly, Garcia and DeJesus-Miranda are entitled to qualified immunity with regard to this claim.

> **b. Claim that DeJesus-Miranda violated the Self-Incrimination Clause of the Fifth Amendment**

Plaintiff alleges that DeJesus-Miranda "placed handcuffs on the Plaintiff and attached them to the bed, automatically placing him in custody and without the benefit of being read his rights, yet obtaining statements to use against the Plaintiff in a criminal action. . . ."  (Dkt. 10 at docket pp. 9-10).  To the extent Plaintiff is attempting to set forth a claim for violation of the Self-Incrimination Clause of the Fifth Amendment, said clause provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. Const. Amend. V.  Plaintiff appears to allege that his rights under the Fifth Amendment were violated because DeJesus-Miranda questioned and

---

[21]Garcia and DeJesus-Miranda's alleged failure to comply with Florida constitutional and statutory law does not, itself, rise to the level of a federal constitutional violation. *See, e.g., Lovins v. Lee*, 53 F.3d 1208, 1211 (11th Cir. 1995) (a violation of state law does "not give rise to a viable substantive due process claim") (citation omitted); *Dean v. Escambia Cnty.*, 2005 U.S. Dist. LEXIS 48729, at *25 (N.D. Fla. Apr. 20, 2005) ("An alleged violation of a state statute does not give rise to a corresponding § 1983 violation, unless the right encompassed in the state statute is guaranteed under the United States Constitution.").

obtained statements from Plaintiff without informing Plaintiff of his *Miranda* rights.[22]  The failure

to follow *Miranda* procedures, however, "does not violate any substantive Fifth Amendment right

such that a cause of action for money damages under § 1983 is created."  *Jones v. Cannon*, 174 F.3d

1271, 1291 (11th Cir. 1999).  Therefore, because there is no cause of action for money damages

under § 1983 for DeJesus-Miranda's alleged failure to advise Plaintiff of his *Miranda* rights,

DeJesus-Miranda is entitled to qualified immunity with respect to this claim.

Accordingly, because Garcia and DeJesus-Miranda are entitled to qualified immunity from

Plaintiff's federal claims, their motions to dismiss will be granted.[23]

## D. Plaintiff has failed to state a cause of action against Defendant Gee under 42 U.S.C. § 1983

Plaintiff first attempts to hold Gee, the sheriff, vicariously liable for his deputies' (DeJesus-

Miranda and Garcia) actions.  In 42 U.S.C. § 1983 actions, officials cannot be held liable solely on

the basis of respondeat superior or vicarious liability.  *Bryant v. Jones*, 575 F.3d 1281, 1299 (11th

Cir. Ga. 2009) (citations omitted).  Instead, supervisory defendants can only be liable if they

participate in the violation or if their actions caused the violation.  *Gonzalez v. Reno*, 325 F.3d 1228,

1234 (11th Cir. 2003).  A causal connection can be established: (1) when a history of widespread

abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and

he fails to do so; (2) when the supervisor's improper custom or policy resulted in deliberate

indifference to constitutional rights; or (3) when the supervisor directed the subordinates to act

unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing

---

[22]Officers must provide a *Miranda* warning to a criminal suspect in custody prior to interrogating the suspect.  *Miranda v. Arizona*, 384 U.S. 436.

[23]Because Garcia and DeJesus-Miranda are entitled to dismissal of the claims against them under the doctrine of qualified immunity, the Court need not determine whether the claims are barred by *Heck v. Humphrey* or subject to dismissal pursuant to Rule 10(b).

so.  *Id*. at 1234-35 (citations and internal quotation marks omitted).

Plaintiff did not allege that Gee personally participated in the alleged constitutional violations; therefore a causal connection must be established.  Plaintiff, however, has not alleged facts indicating: (1) a widespread history of officers improperly obtaining a suspect's confidential medical information that would put Gee on notice of the need to correct any alleged constitutional deprivation, (2) that Plaintiff was deprived of his constitutional rights as a result of Gee's policies or customs,[24] or (3) that Gee directed the officers to obtain Plaintiff's confidential medical information or knew that the officers would obtain that information and failed to stop them from doing so.  Therefore, Plaintiff has failed to allege a causal connection between the actions of Gee and any alleged constitutional deprivation.

To the extent Plaintiff alleges that Gee was aware of the officers' actions and "willfully and knowingly allowed" the officers "to bring criminal action against the Plaintiff"(Dkt. 10 at docket p. 10), Plaintiff essentially alleges a malicious prosecution claim against Gee.  *See Uboh v. Reno*, 141 F.3d 1000, 1002 (11th Cir. 1998) (malicious prosecution can form a basis for a Fourth Amendment claim under § 1983).  However, "[a] police officer who arrests a suspect but does not make the decision of whether or not to prosecute cannot be liable for malicious prosecution under § 1983."  *Derosa v. Rambosk*, 732 F. Supp. 2d 1285, 1301 (M.D. Fla. 2010) (citing *Eubanks v. Gerwen*, 40 F.3d 1157, 1160-61 (11th Cir. 1994)).  Plaintiff has not alleged any facts indicating that either Gee, Garcia, or DeJesus-Miranda made the decision to prosecute Plaintiff.  In Florida, the State Attorney's Office decides whether or not to prosecute a suspect.  *See State v. Bloom*, 497 So.

---

[24]Plaintiff's allegation, in his response to Gee's motion to dismiss, regarding Gee's policies and procedures is wholly speculative (Dkt. 34 at pp. 6-7).  The allegation does not raise the "right to relief above the speculative level" or otherwise create "a reasonable expectation that discovery will reveal evidence" supporting a claim against Gee. *Twombly*, 550 U.S. at 555-56.

2d 2, 3 (Fla. 1986) ("Under Florida's Constitution, the decision to charge and prosecute is an executive responsibility and the state attorney has complete discretion in deciding whether and how to prosecute.").  Therefore, Gee cannot be liable for malicious prosecution.

Moreover, even if Gee could be held liable for malicious prosecution, the claim fails.  "To establish a federal malicious prosecution claim under § 1983, a plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of her Fourth Amendment right to be free from unreasonable seizures." *Kingsland v. City of Miami*, 382 F.3d 1220, 1234 (11th Cir. 2004). Plaintiff must establish each of six elements to support a claim of malicious prosecution under Florida law: "(1) an original judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damages as a result of the original proceeding." *Id.* at 1234.  Plaintiff did not allege that the criminal proceedings terminated in his favor.  Rather, he alleged that the criminal proceedings resulted in his conviction (see Dkt. 10 at docket p. 12) ("Due to these unauthorized events, Plaintiff was convicted of attempted murder and sentenced to life in prison.").  Plaintiff's allegations are therefore insufficient to state a claim for malicious prosecution.

Accordingly, Gee's motion to dismiss will be granted.

**E. Plaintiff has failed to state a cause of action against TGH under 42 U.S.C. § 1983**

"A successful section 1983 action requires a showing that the conduct complained of (1) was committed by a person acting under color of state law and (2) deprived the complainant of rights,

privileges, or immunities secured by the Constitution or laws of the United States." *Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992). A private party such as TGH will only be considered a 'state actor' for purposes of § 1983 upon satisfying the "public function test, the state compulsion test, [or] the nexus/joint action test." *Id*. Plaintiff has not alleged facts that would arguably show that TGH was a state actor under any of these tests. *See id.* at 1130-32 (applying the three tests and holding that private hospital which received patient involuntarily committed under Georgia Mental Health Code was not a state actor). *See also Greco v. Orange Mem'l Hosp. Corp.*, 513 F.2d 873, 877 (5th Cir.), *cert. denied*, 423 U.S. 1000 (1975) ("[A] private hospital is subject to the provisions of 42 U.S.C. § 1983 and the Fourteenth Amendment only if its activities are significantly affected with state involvement.").

The primary argument in Plaintiff's response to TGH's motion to dismiss is that TGH is a state actor because it has policies and procedures which allow medical staff to (1) provide law enforcement with "free reign" to a patient's confidential medical information, and (2) conspire with law enforcement to violate patients' privacy rights (Dkt. 36 at 3). Both the Second Amended Complaint and Plaintiff's response to TGH's motion to dismiss, however, are devoid of any facts to make out a plausible claim with respect to such contentions (Dkts. 10, 36). Further, TGH cannot be held liable under § 1983 on a respondeat superior or vicarious liability basis for the actions of TGH's employees, i.e., the medical staff and Chaplain Santamaria. *See Harvey*, 949 F.2d at 1129 ("A defendant cannot be held liable under section 1983 on a respondeat superior or vicarious liability basis."). Plaintiff therefore has failed to state a cause of action under § 1983 against TGH.

Accordingly, TGH's motion to dismiss will be granted.

**F. Plaintiff has failed to state a cause of action against Defendant Santamaria under 42 U.S.C.**

**§ 1983**

With respect to the claims against Defendant Santamaria, the Second Amended Complaint alleges that on November 17, 2009, Santamaria was an employee of TGH working as a hospital chaplain. While Plaintiff was receiving treatment at TGH, Santamaria initiated a conversation with Plaintiff. Plaintiff "understood" the conversation was "spiritual guidance," and "assumed" the conversation was "confidential." Santamaria, however, divulged (unspecified) information that he obtained from Plaintiff during that conversation to the police. And, Santamaria subsequently testified against Plaintiff during Plaintiff's criminal trial.

Plaintiff contends that on November 17, 2009, Santamaria was "acting as an agent for the state" rather than as a chaplain providing spiritual guidance. The Second Amended Complaint, however, does not allege sufficient facts indicating that Santamaria was a state actor. In determining whether a private party can be considered a state actor, the Eleventh Circuit Court of Appeals has stated:

> A private person is considered a state actor if the state coerced or "significantly encouraged" the private person to act, the action was traditionally performed by a state official, or the state was a joint participant in the action. *Rayburn ex rel. Rayburn v. Hogue*, 241 F.3d 1341, 1347 (11th Cir. 2001). A private party may be considered a state actor if he conspired with state officials to commit the alleged constitutional violation. *Dennis v. Sparks*, 449 U.S. 24, 27-28, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980). To establish a conspiracy, the plaintiff must present "evidence of agreement between the defendants" to violate his rights. *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1284 (11th Cir. 2002) (citing *Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992)).

*Lloyd v. Card*, 283 Fed. Appx. 696, 699-700 (11th Cir. 2008).

The Second Amended Complaint does not allege any facts that would support an inference that the State coerced Santamaria to act or was a joint participant in Santamaria's actions, or that providing spiritual services to patients in a hospital is an action "traditionally performed by a state

official." Nor does the Second Amended Complaint allege any facts that would support an inference that Santamaria conspired with state actors.[25]   Plaintiff's conclusory allegations that Santamaria "acted under color of state law" and acted "as an agent for the state" are insufficient to support an inference that Santamaria was a state actor.  *See Harvey*, 949 F.2d at 1133 (conclusory allegations are insufficient to establish state action through joint action or conspiracy).  Moreover, Santamaria providing a statement to the police and testifying against Plaintiff during Plaintiff's criminal trial did not transform Santamaria into a state actor.  *See Martinez v. Ashtin Leasing, Inc.*, 417 F. App'x 883, 885 (11th Cir. 2011) ("The mere act of reporting a suspected crime to the police is insufficient to establish state action for purposes of a false arrest claim under § 1983."); *Moldowan v. City of Warren*, 578 F.3d 351, 399 (6th Cir. 2009) ("Providing information to the police, responding to questions about a crime, and offering witness testimony at a criminal trial does not expose a private individual to liability for actions taken 'under color of law.'"); *Woods v. Valentino*, 511 F. Supp. 2d 1263, 1274 n.19 (M.D. Fla. 2007) (noting that merely filing police reports does not transform a private citizen into a state actor).

Further, even if Santamaria was a state actor, Plaintiff's claims are subject to dismissal for failure to state a claim because Plaintiff has not alleged facts indicating that Santamaria's actions deprived Plaintiff of a right secured by the Constitution or laws of the United States.   The evidentiary privilege for communications with clergy is not a constitutional right; rather, the

---

[25]Although in his response to Santamaria's motion to dismiss Plaintiff contends that Santamaria conspired with law enforcement to obtain information from Plaintiff (Dkt. 37 at pp. 6-7), the Second Amended Complaint  is devoid of allegations to support the contention (Dkt. 10).  Moreover, the allegations are vague, conclusory, and insufficient to allege a conspiracy because Plaintiff does not allege that Santamaria and law enforcement reached an understanding or agreement.  *See Albra v. City of Fort Lauderdale*, 232 Fed. Appx. 885, 890 (11th Cir. 2007) ("To establish a prima facie case of conspiracy under 42 U.S.C. § 1983, the plaintiff must allege, among other things, that the defendants "reached an understanding to violate his rights.") (citation omitted).

privilege is grounded in common law or state statutory law.  *See Maness v. Meyers*, 419 U.S. 449, 461 n. 8 (1975) ("The constitutional basis for [the Fifth Amendment privilege against self-incrimination] distinguishes it from other privileges established by state statute or common law such as those arising from the relation of priest and penitent, lawyer and client, physician and patient, and husband and wife."); *Rankin v. Roberts*, 788 F. Supp. 521, 523 (D. Kan. 1992), *aff'd*, 9 F.3d 117 (10th Cir. 1993) ("The marital privilege is merely a testimonial privilege based on statutory provisions or found in the common law . . . [and] does not rise to the level of the constitutionally guaranteed right against self-incrimination under the Fifth Amendment.").  Because Plaintiff's claim is based upon a  violation of a state statutory right rather than a violation of a specific federal constitutional right or federal statutory right, the claim fails to state a cause of action under § 1983 against Santamaria.  *See Knight v. Jacobson*, 300 F.3d 1272, 1275-76 (11th Cir. 2002) (stating that a violation of state law is not enough by itself to support a federal § 1983 claim).[26]

Accordingly, Santamaria's motion to dismiss will be granted.

**G. Defendant Gee's state law counterclaim**

Gee requests, pursuant to §§ 960.293 and 960.297, Florida Statutes (2009), damages from Plaintiff for the cost of Plaintiff's incarceration (Dkt. 15 at pp. 22-25).  This is a state law claim. "[S]tate claims should ordinarily be dismissed if all federal claims are eliminated before trial." *Edwards v. Okaloosa County*, 5 F.3d 1431, 1433 (11th Cir. 1993).  Because Gee is entitled to

---

[26]The Supreme Court has held that "the Fifth Amendment protects against 'compelled self-incrimination, not [the disclosure of ] private information." *Fisher v. United States*, 425 U.S. 391, 401 (1976) (quoting *United States v. Nobles*, 422 U.S. 225, 233 n. 7 (1975)).  The allegations of the Second Amended Complaint give no indication that Plaintiff was compelled to speak to Santamaria.  Rather, the allegations show that Plaintiff voluntarily spoke to Santamaria.  Therefore, Santamaria's disclosure of the information Plaintiff provided to him does not implicate the Fifth Amendment's protection against self-incrimination.

dismissal from this case, the Court declines to exercise supplemental jurisdiction over his counterclaim for damages for the cost of Plaintiff's incarceration. *See Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1288 (11th Cir. 2002) ("Both comity and economy are served when issues of state law are resolved by state courts. The argument for dismissing the state law claims in order to allow state courts to resolve issues of state law is even stronger when the federal law claims have been dismissed prior to trial.").

Accordingly, it is **ORDERED AND ADJUDGED**:

1. Defendant David Gee [sic], Sheriff, Hillsborough County, in his Individual and Official Capacity, Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law and Counterclaim (Dkt. 15), Defendant Moises Garcia's Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Dkt. 16), Defendant Victor DeJesus Miranda's Dispositive Motion to Dismiss Plaintiff's Second Amended Complaint and Incorporated Memorandum of Law (Dkt. 17), Defendant Florida Health Sciences Center, Inc. D/B/A Tampa General Hospital's Motion to Dismiss "Proposed Supplemental Complaint" and Incorporated Memorandum of Law (Dkt. 21), and Defendant Miguel Santamaria's Motion to Dismiss "Proposed Supplemental Complaint" and Incorporated Memorandum of Law (Dkt. 28) are **GRANTED**.

2. This action is **DISMISSED** with prejudice as to all Defendants.

3. Defendant Gee's counterclaim is **DISMISSED** without prejudice because the Court declines to exercise supplemental jurisdiction over this state law claim.

4. The **Clerk** is directed to terminate any pending motions as moot, enter judgment in favor of Defendants as to the Second Amended Complaint, and close this case.

**DONE AND ORDERED** in Tampa, Florida on March 20, 2015.

Charlene Edwards Honeywell
United States District Judge

Copy to: Counsel/Parties of record